If it please the court, my name is Michael Bigelow and I represent appellant John Jingles. If I may, ever so briefly, deal with an issue that has probably been decided and I recognize on really, really thin ground. And that has to do with my Apprendi argument, which is at the tail end. There is language somewhere, and I'm not able to provide the site, but I know I've read it. And that is that Apprendi deals with facts which increase the prescribed range of penalties. And that's what I'm relying on, is that in this case, a probation officer decided without benefit of consultation with the AUSA, without benefit of a jury, that two additional points ought to be added to the guideline calculation. That resulted in a mandatory life sentence. Somehow it seems to me to be unreasonable or unfair to permit a judge or to deny a judge discretion based on speculation, estimation and concession that in this case we don't know the quantity of drugs, which is one of the other issues. But also on the fact that a gun was found in somebody else's bedroom and was not associated directly with the drugs in this case or the conspiracy in this case or the CCE in this case. And thus there was a two-level bump which resulted in a mandatory life sentence. I know Apprendi does not speak specifically to that, the mandatory, the maximum sentence was life in prison. If we get to the guideline calculation, to the drug calculation, if you accept that argument or accept that premise at least. But if you don't, the judge had no discretion. Yes, ma'am. I'm a little confused maybe just to understand where the Apprendi fits in with the, you're talking about the firearm enhancement. Yes, I am. That's the two points. That's correct. And the guidelines are pretty broad, as you know, in terms of that gun can be virtually anywhere at any time during the conspiracy. So it would just help me to understand in light of the very broad guidelines how that fits in your Apprendi argument in terms of a factual issue. I don't know where else to fit it because it doesn't really, I don't know where else to fit it. But Apprendi says, as we all know, that there's got to be a finding beyond a reasonable doubt if you want to take the guidelines above the statutory maximum. Or an element of the crime. Or an element of the crime. This is not an element of the crime. It's a sentencing enhancement. This is probably one of the clear sentencing enhancements, correct? It is a clear sentencing enhancement. Yes, I believe that all of the cases deal with this as a sentencing enhancement. Now, you spoke of it being in someone else's bedroom. Weren't there several documents with Jingle's name on it in the bedroom? Your Honor, I don't believe, I don't recollect that to be the case. There may have been, but it is my recollection from the facts of the case that Jingle's was in some other part of the residence. Well, I have here that there was a checkbook in his name, a mortgage statement in his name, insurance documents. That may well have been it. Doesn't that suggest that he was using the bedroom? I'm sorry, Your Honor. Doesn't that show he was using the bedroom? I believe he was using the entire house. But the point is, the evidence is really skinny with respect to his possession of that weapon. You find the gun in the man's bedroom, what do you think? I submit that, Your Honor, that it is not necessarily his bedroom. It is reflected or referenced by the probation officer to be his bedroom. But I think that there are other references in the transcript, at least, that he was elsewhere. Well, if he was using the whole house and he's got all these documents that are quite personal to him in the bedroom, I think it's a reasonable inference that it was his bedroom and his gun. It may be a reasonable inference, Your Honor, but certainly it's one that if we're going to deprive the sentencing judge of any discretion at all and mandate that this man be sentenced to life in prison, then it's something that ought to be determined beyond a reasonable doubt. Certainly it ought to be determined by preponderance of the evidence, which the sentencing judge never did find, by the way. It's kind of hard to sort this out from what was argued below, but was this issue of not in my bedroom raised in the trial court so the judge could have figured out? No. No. No. See, that's kind of a problem I have because I know this sometimes happens. We get up here on appeal and it would be better if it were raised. Because then the judge could say, well, either under apprendi I do or don't need to have some kind of fact finding or I need to make a determination beyond a reasonable doubt, whatever the case is. But he never got that opportunity, right? I wasn't trial counsel. No, I understand. That's usually also what happens is we get very good appellate counsel here who finds these issues. So I suppose it would be a plain error review. In other words, we can review it, but it would be plain error. I would tend to agree that it – I hate to concede anything. Are you going to be conceding or just be following the law, I suppose? It probably is a plain error review. Okay. I would agree with that. My other point, though, is that the sentencing judge never did make a finding. He made no finding. He simply said that I adopt the findings of the probation officer, period. He did not state his reasons beyond that. He didn't make a finding by preponderance of the evidence. Counsel, but the judge is allowed to adopt the findings of the probation officer. There is case authority to that effect, Your Honor. That's correct. But I submit in this case his findings. There are some determinations made by the probation officer, if I recall, and I can't recall specifically, but that are in error, that there were – he did not adopt all of the findings. For example, I don't believe that he adopted the finding that counts 21 and 22 had a maximum sentence of 480 months. In fact, imposed a life sentence for those terms. So the fact that he didn't adopt them all would support an inference that he went through them and determined which ones were worthy of adoption, wouldn't it? It's impossible to say, Your Honor, because he – the sentencing colloquy, if you will, is although he provides allocution to defense counsel, provides allocution to Mr. Jingles, and obviously to Mr. Twist, once that's heard, he runs through it in a page and a half, and he says, okay, I adopt the findings. And there's a little hyperbole. There may be two pages, but I adopt the findings of the probation officer I sentenced, et cetera, et cetera, et cetera, and just simply does not do much more. Now, if I may, the CCE conviction, it seems to me, must fall for a couple of reasons, mostly having to do with the finding of guilt on the conspiracy. I argue in my brief that the conspiracy proved by the government was not the single conspiracy alleged in the indictment, but rather multiple conspiracies. And as I see it, there are at least two additional conspiracies. One involves Gary Morris, and the other involves a fellow by the name of Font. Font was in a conspiracy, and evidence was adduced at trial to the fact that he and Williams and Mr. Jingles were involved in the distribution of cocaine. They had their own deal going. Morris and his wife, soon-to-be girlfriend or at least significant other of Mr. Jingles, and Mr. Jingles were involved in the third conspiracy, if you will, including Mr. Jingles Gofer, and I'm blocking on his last name. Chantelle Hearn was Mr. Morris's wife, the fellow who was caught in Rome, Texas. But in any event, so there are these two separate conspiracies. Now, one of the indicators, it seems to me, that they are separate conspiracies is the fact that neither Morris nor Font were found by the jury to be part of the CCE. They were both specifically precluded or eliminated as supervisees in the CCE. Now, given the state of facts as presented to the jury about their involvement in drug trafficking with Mr. Jingles, had they not been in their own separate conspiracy with Mr. Jingles and the other individuals, they would have most likely been found to be supervisees of Mr. Jingles in the CCE. They obviously knew about the drugs. They knew about drug trafficking. They knew how to cook drugs. They knew how to sell it. They sold it to distributors. They returned the funds of the money or proceeds from the sales back to Mr. Jingles when he fronted the drugs to them. So we've got three separate conspiracies. Now, what's the prejudice? What's the big deal? The jury found one conspiracy. Why do we care? Well, the big deal is they were never instructed which conspiracy, which of the three conspiracies was the element of the CCE. Now, the court clearly instructed that the conspiracy was they must find as an element of the CCE a conspiracy. The jury was never instructed which of the conspiracies was the element. By doing that, there's a variant, and it's fatal, it seems to me. And the CCE, yes, ma'am? Well, the way I was having to take the evidence favorable to the government here at this stage of review, why wouldn't it be reasonable to view it as, you know, Mr. Jingles, he basically has this web of, I don't know if you want to call them distributors, suppliers, and people who keep his not insignificant operation afloat? Why isn't that viewable as a single conspiracy when taken in the light most favorable to the government? Well, sure. I mean, that's what they found. They found that he had a number of people involved in a conspiracy. That's one of the elements of the CCE. A number of people involved in a conspiracy. He had them cooking. He had them doing this. He had them doing that. He had them doing the other thing. No question about that. But which of the three conspiracies is the element of the CCE? The court instructed them that in order to find Mr. Jingles guilty, you must find him guilty of conspiracy. Which conspiracy? Which conspiracy? Of course, we're kind of like going around the racetrack there, because if there's a single conspiracy, then all this gets melded together. You would like to kind of chop it up into multiple conspiracies. I don't. It was chopped up into multiple conspiracies, and there should have been a unanimity instruction. They had to decide which one of these conspiracies was the predicate act of the CCE, because as it stands, the jury's getting this information. You've got three conspiracies out here, ladies and gentlemen. You've got five supervisees. Do they have to be the same? There was no instruction to the jury that they had to be the same. You can't find him guilty of the Morris Hearn, the guy whose name I can't think of, Johnson, Matthew Johnson. You can't find him guilty of this conspiracy, or you can find him guilty of any one of these conspiracies plus the five. It's all got to be the same, because the conspiracy, if I'm not mistaken, was also listed as a predicate act. You're just saying we don't know what they found him guilty of. We don't know what they found him guilty of. Counsel, was a unanimity instruction requested? No, ma'am. All right. The other instruction, it seems to me, that should have been requested, and I'm going to try to reserve a minute or two, if I may, but the other instruction that should have been requested was the fact that the conspiracy was a lesser included to the CCE. Now, we, in a number of cases, get into it having to do with, okay, he's been found guilty of conspiracy and he's been found guilty of the CCE, and since they meld together, he can't be sentenced for both. It seems to me that a better way to handle this particular issue, because one has to be vacated and the conspiracy must be vacated, and I think counsel and I both agree on that, but the better way to handle it would be to charge the CCE the conspiracy, give a lesser included instruction on the conspiracy, and typically with a lesser included instruction, the jurors are also instructed that if they find the greater offense, in this case the CCE, to have been committed, then they make no finding with respect to the conspiracy. Unless the conspiracy charged, there's a separate and distinct act. Here it was not. So that would obviate this bit about coming to court and appellate court and asking count one to be vacated, the multiplicitous counts to be vacated. But had the lesser included instruction been given, which it was not, with respect to count two, the jury could have found him guilty in that count of conspiracy maybe the overarching conspiracy alleged by the government, and then decided that they didn't have enough evidence for the CCE. The prejudice, of course, lies in the fact that he was not afforded an opportunity to be found guilty of the lesser included to count two. I will reserve the rest of my time unless the Court has any additional questions. That's fine. Thank you. Good morning, Your Honor. My name is Bob Twist. I'm an assistant United States attorney in Sacramento and represent the United States. Addressing first the issues raised by appellant with regard to the Apprendi issue, as the Court knows, the only thing required by Apprendi is to submit to the jury those factors which determine the maximum sentence. In this case, the firearm is appended to an underlying drug violation. The jury had a findings worksheet which asked the jury to find, if they found guilt, not only to find guilt but to identify specifically which drug or drugs were involved. And with regard to each drug it found involved, whether it found the necessary triggering amounts to get to a ten-to-life sentence for crack cocaine, that being 50 grams, or for powder cocaine being five kilos. And with regard to each count in the indictment involving a drug offense, the jury went through that analysis and made a specific finding as to which type of drug and their triggering quantities. There were several counts in which the jury found he was guilty of possession of drugs or conspiracy to possess drugs with intent to distribute, it involved crack cocaine, and it involved more than 50 grams. So it's clear from the specific findings of the jury, beyond reasonable doubt, that the maximum penalty which could be imposed was life imprisonment. The defendant was sentenced to life imprisonment. That's all that Apprendi requires. There's no requirement under Apprendi or any of the cases which have come after Apprendi to have the jury find, beyond reasonable doubt, each of the facts which stand behind a guideline calculation by the judge. And while the appellant doesn't specifically state it in this fashion, what the defendant's position is, the appellant's position, would require in every criminal case the jury to have a finding of fact on any issue which would support any change in any guideline range anywhere along the line. Apprendi doesn't require that. No other case I've seen requires that or even suggests that. And there are a lot of cases which say exactly the opposite, that the only thing that's triggered by Apprendi is the maximum sentence. Now, addressing Judge Noonan, your question with the handgun issue, as I recall from the record, there were things of personal property in the room where the gun was found. And as the appellant points out, the appellant had essentially the entire house was his domain. But I think we're going a little short if we look only at the very narrow issue of a handgun in the bedroom of that house, because that's not the only evidence in the case of use of handguns in furtherance of the drug conspiracy. There was a handgun found in Mobile, Alabama, in Lett's apartment,  and it was testimony in the record from Deshaun Lee, as I recall, that that gun, he had found that gun in the apartment a few days prior to the search, that he had discussed it with Jingles. Jingles acknowledged that it was his gun and it was there to protect his drug trafficking. Going to the gun found in Sacramento on the day of the search, not only do we have the gun, and the gun here is a Tec-9 semi-automatic, it looks more like a machine gun type of a gun than a pistol. It's fairly long, has a clip in it as opposed to a revolver type of a weapon. In addition to the Tec-9, however, agents found a very significant amount of ammunition. They found speed loaders for the Tec-9, and as the agents were executing a search warrant at that location, the UPS driver came and made delivery to Jingles of two 40-round banana clips to be used in a semi-automatic or automatic rifle. So it's not simply, as Appellant suggests in his opening brief, a gun found in a house where there was some marijuana found. What we're talking about is several guns with ammunition and firepower enhancements found in two different locations, not in support of a de minimis amount of marijuana, but in support of an overarched conspiracy to trafficking cocaine and in rock cocaine. And those are the facts which were outlined, first of all, in the evidence at trial and outlined by the probation officer in the probation report and which were adopted by the judge when he imposed sentencing. The judge wasn't mandated to hand down life imprisonment in this case. The way the guidelines scored out, the judge calculated it as a 44. He actually could have calculated it as a 46. As you might recall in the pre-sentence report, there was a discussion about whether there should be a two-level departure upward because the quantity of drugs substantially exceeded the threshold for level 38, the maximum drug guideline. And the court found the sentencing wasn't necessary because he was already at 44. He didn't even have to address the departure, so he declined to depart upward. So the guideline scoring was, in fact, life-to-life. However, if the judge felt that there was a grounds for downward departure, that a life sentence was not appropriate under the totality of the circumstances in that case, if there were factors which could have supported a downward departure, he clearly could have downward departed and imposed a sentence of less than life. It's not a situation where there's a statutory mandatory life imprisonment, as there is, for instance, in a drug felony with two priors where the judge has no discretion. He or the judge couldn't have found factors to depart downward if they were present. They weren't present, and there's really no basis for him to have departed downward. But I think to say that he had no choice I think is not accurate. He did have choice if there were factors thereupon which a downward departure would have been in the best interest of justice. Moving to the CCE count, the CCE count naturally, in the government's view, does not fall. Appellant talks about single conspiracies versus multi-conspiracies and points to the activities involving only two folks, Morris and Font, and says because Morris and Font are arguably engaged in a side deal over here, there is no conspiracy to support the CCE. But the CCE can be supported by a conspiracy with as little as one other co-conspirator. All that's required in the CCE count is that there be three or more drug felonies undertaken in concert with five or more people. It's the in concert requirement which triggers the conspiracy. As the Court knows, there's no requirement for the United States to submit to the grand jury a conspiracy count in addition to the CCE count. The grand jury could have returned a one-count indictment if it so chose, charging only CCE. And they would have had to have alleged in there that there was a conspiracy. They would have had to have found a conspiracy because in order to find they acted in concert with the defendant, you'd have to find, by definition, a conspiracy. But what we have here is a single overarching conspiracy over a period of years where there are five people, essentially, who are continually in the conspiracy, at least in the last two or three years. Those folks are Jingles himself, Deshaun Lee, Foster, Matthew Johnson, Walter Dawson, and Chantal Hearn. And there are other folks who come in and out of this conspiracy from time to time. David Williams, for instance, who is Jingles' brother. David Williams, from periods of time, went to state prison or went to federal prison and wasn't available to be out trafficking drugs. When he was on the street, he was acting in concert with Jingles. And what we see, particularly with regard to Morris and Font, is that you have the core group of Jingles, and occasionally with Williams, trafficking in drugs with Morris and with Font. What the jury found in their verdict was that Jingles had not supervised or organized or managed Morris or Font. What we see is that Jingles' conspiracy is providing drugs to Morris and Font. The conspiracy is alive. The fact that they bought drugs from the conspiracy doesn't show that there's more than one conspiracy. You have a single conspiracy involving four or five constant people. Johnson, by the way, I just want to address this because the defendant spent so much time in his brief. Johnson isn't only a guy who pleads guilty to a phone count or, as the appellant alleges, is involved in interstate travel in aid of racketeering. What the witnesses testified at trial is that he was identified as the one they called the gopher, meaning that there were several folks who testified that they had ordered cocaine from John Jingles and that it was Matthew Johnson who delivered that cocaine at the appointed time and the appointed place. Dawson testifies that at one point he had arrangements to take delivery of cocaine from Jingles and when he arrived the cocaine wasn't there and it wasn't until Johnson came with the cocaine and gave it to Jingles that Jingles could give it to Johnson. And then the last issue is where Johnson is arrested in Rome, Texas, trafficking a large amount of currency from Mobile, Alabama, back to Sacramento, California. But the appellate kind of shows short thrift to all the rest of the involvement of Johnson throughout several years of their conspiracy, so I just wanted to highlight those facts for the court. Counsel, do you agree with opposing counsel that the conspiracy counts, count one and 16 through 18, should be deleted from the judgment and the special assessment calculation? Yes, actually, in our brief, Your Honor, we suggest that it should be remanded, I think, to correct a clerical error because the judge did not impose judgment on count one. Really just a clerical error? Exactly, it's a clerical error. We told the judge, myself and co-counsel, Mr. Lane, he said, look, he's a clearly multiplicitous. Once the jury had come back, don't impose judgment. And in the record of trial, I abstracted for you in the brief, the section where the judge found there to be multiplicities and specifically said he was not imposing judgment. But it was included in the special assessment calculation, nevertheless. It clearly was, and I have not spoken to the court personally about that, but I think it's clear under the circumstances because there's so many counts and so many dollars that it was strictly a clerical mistake. You know, the judge did that. The judge put out the amount of money. It wasn't the clerk. The judge put out the amount. I didn't catch it. My co-counsel didn't catch it. Mr. Cousins didn't catch it. But when I saw the opening brief, I sat down and added up the counts and added up the money, and it clearly is wrong. So I think the total number of counts of conviction is 24. It's either 24 or 25, whatever I have in the brief. So it needs to be reduced, obviously, back to that. I can't think of any way to do it except to remand with instruction to the clerk to make a correction on the judgment and sentence order. Going to the lesser-included offense issue, first, there was no request for a lesser-included offense instruction. I don't know. I'm speculating a little bit, but I would speculate that that was a tactical decision by counsel. He has here a continuum criminal enterprise count. In my experience, an awful lot of times, maybe most of the time, and myself as a former defense counsel, you might make a tactical decision. Look, I have an issue about the CCE count. Let me roll the dice. Maybe they had quit on the CCE count. They don't know that they can then vote on a lesser-included. And I walk on this whole thing. And that's the reason I typically, in my cases, include independently a conspiracy count and a CCE count, so that it's clear the jury has to vote both on conspiracy, which is a lesser-included count one, and they have to vote on CCE, which is, in this case, count two. There's no question about the jury getting confused in the deliberations room about the judge's instructions on mechanically how to proceed. Now, in this case, they, in effect, were given a lesser-included instruction. Because they had count one in the indictment, they were instructed on all the elements of conspiracy as a freestanding offense. And they found guilt of conspiracy in count one. So you know that if they had been given a lesser-included instruction, they would have found guilt on the lesser-included of conspiracy in count two, because they did it on count one. You also know, because of the special verdict form, all of the factors necessary to trigger a finding of guilt on the CCE count, above and beyond the acting in concert, were also specifically found, because they're in the special verdict finding. The identities of the folks with whom Jingles acted in concert, the specific offenses that make up the series of offenses that he committed in concert with those folks, they're all outlined in the special verdict form. And there's, of course, the testimony of Special Agent Jensen, the IRS agent, at the end of the case where he testified as a fact witness, I want to point out, not as an expert witness, as a fact witness to the accounting analysis, which he did personally, analyzing the defendant's financial records and third-party records pertaining to the defendant, and calculated the amount of income that the defendant had from an unknown source, certainly not from carpet cleaning. So that accounts for all the elements of CCE, above and beyond. So you know that there's absolutely no possibility of any prejudice, even if it were not a tactical decision by defense counsel not to fail to ask for that instruction. Those, I think, are all the issues raised by Palantino's opening. I'm happy and naturally to answer any questions the Court may have on any other issues raised in the case. I don't have any other prepared remarks, however, with regard to any of the other issues. We have good briefing from both sides on the remaining issues. Thank you. Thank you. Time for rebuttal. With respect to the CCE count, how many of the jurors felt that the font conspiracy satisfied the conspiracy element of the CCE? How many of the jurors felt that the Morris conspiracy satisfied the conspiracy element of the CCE? The simple fact of the matter is we don't know and we will never know, and therefore the conviction must fall. With respect to the lesser included instruction, counsel and I agree, although Mr. Twiss would never admit it, they found Mr. Jingles guilty of conspiracy. Had that been included in the CCE by the mechanism of a – I'm making this up as I go along – by the mechanism of a… Well, what is your point in making this up? Can I ask you, why are you doing this? This is something that was not requested. It's not something that really we're going to have an opportunity to consider. What sort of speculation about what would have happened if there had been a lesser included instruction? Because the jury then would have had the opportunity not to find him guilty of the CCE. But why all the speculation when it wasn't asked for? Building a record. Thank you very much, Your Honor. Thank you. Thank you. The case just argued is submitted, United States v. Jingles.
judges: Noonan, McKeown, Rawlinson